And we will go to the second case, which is Macky vs Chertoff. Macky vs Chertoff Macky vs Chertoff Macky vs Chertoff Scott Michaelman As you know, we read the briefs, so I'm going to start you off with a hypothetical. A hospital has a surgeon on the staff who happens to be African American, and there has been enough evidence of race discrimination. And he's about to go into surgery, and the hospital finds out evidence that he never went to medical school. He never even finished the university that he claims to have finished. Can the hospital dismiss him? That's an excellent question, Your Honor. I used to teach law school. The hospital can dismiss him for his failure to go to law school, but the hospital cannot do more. Medical school. Excuse me, medical school. And the medical degree is a prerequisite qualification to be on the staff. They can't dismiss him for his failure to attend medical school. They cannot dismiss him. They cannot make a decision that is made even in part on the basis of discriminatory animals. Yeah, but if it's a qualification for being on the staff, and let's say in this case there's no question, there's no dispute that he does not have the requisite qualification, why can't they dismiss him right off the bat? Well, I would submit that if it's really obvious that he can't perform his job, then there's no question. Yeah, but he never went to medical school, and that's a qualification. Do you let somebody come off the street and say, I'm really a good surgeon, I can go into surgery? Not if I'm being operated on, I hope. Sure, Your Honor. I would hope not. But in that case, I would think it would be relatively difficult to show that discrimination played any role in the decision because it was so obvious he had to be on the staff. Assume discrimination played a role. I'm willing to assume that discrimination played a role. One of his colleagues said, I don't like this guy being on the staff just because he's an African American, and I am going to investigate his background, and that's how they find out that he never went to medical school. Well, the mixed motive framework under Title VII allows a claim to proceed wherever there is evidence of both a legitimate reason for an adverse action and an illegitimate reason. That's the issue in this case. And you're absolutely right. The issue in this case, as I see it, is whether you can maintain a mixed motive action without meeting the qualification requirement. Now, if you're doing a direct discrimination action, we know that qualification is one of the prerequisites. I don't know of a case, and we'll ask the government, but I don't know of a case that says qualification is a prerequisite and a mixed motive, and we have to decide that. That's, I think, what's really before us now. And in most cases, it wouldn't be so clear that the qualification was not present. So you wouldn't get, you wouldn't be able to dismiss on a motion to dismiss. In this case, the security clearance was a qualification. And so moving to the facts before us, the question is, having admitted that you haven't met the security, that we can't inquire, the Supreme Court said we can't inquire into the validity of the lack of a security clearance, the requisite that then, so the question is, why should you be able to proceed with a mixed motive case? Particularly because the action you are saying that where the discrimination was a factor was the suspension. But the suspension came after the at least temporary removal of the security clearance. Judge Roth, I think your question provides one important way in which to distinguish this case from Judge Sloviter's hypothetical, and that is the two actions were different. Unlike the case that Judge Sloviter presents of the individual about to go into surgery who it's found out has not gone to medical school, Dr. Mackey's clearance revocation and his suspension took place at two different times. And although there was a preliminary determination, as Your Honor notes, to deny his security clearance prior to his suspension, that process was still pending when he was suspended without pay. But with the temporary removal, he could not, he did not have, he was not qualified to do his job because he could not have access to confidential classified information which he needed to do his job. Yes, but Your Honor, the Supreme Court has said in Swierkiewicz v. Sonoma that being qualified is not an element of the prima facie case. It's an evidentiary. Well, that's under the McDonnell-Douglas, and you're disavowing proceeding under McDonnell-Douglas. You were proceeding under the mixed motive theory. Well, Your Honor, we believe that the recognition in Swierkiewicz that being qualified is not an element of the prima facie case comes out of a recognition that there are many different ways to prove discrimination. And the Supreme Court said there that because there are many different ways to prove discrimination, including, for example, the mixed motive theory we have here, that it's unnecessary to say from the outset you're qualified. For example, in this case, even assuming that Dr. Mackey was unqualified, let's even assume he was unqualified when he was suspended. They still could have taken other action. They could have kept him on paid leave, as they had for two years. They could have transferred him, as had been done in the case of another employee and a fact that was ignored by the district court. You plead that, but you don't say who or where or when that other employee was. And if we are – can we take on the pleadings, that vague allegation, that we don't know if it really is the situation that could apply to Dr. Mackey or not. We don't know. I mean, I've had some dealing with federal budget crunches. It's not that easy to move people around from position to position. He has training in a particular position that's in transportation safety and I think protection against bombs. It seems to be pretty much limited to an individual who does have a security clearance. Your Honor, we do provide a few specifics about this other individual. At pages JA83 and 84, we note that the person worked for the same agency. Her clearance had been revoked, not merely called into question, but she was reassigned to another division. Well, what difference does it make? I mean, let's get to the bottom of it. What is it that you are asking for? We are asking for a remand on the Title VII claim. For what period? For what? For what? For pay? For a limited period? To prove, most likely, for the limited period between the suspension without pay The dates. The dates between when Dr. Mackey was suspended without pay September 7, 2005. Yes, Your Honor. And when his clearance was finally revoked. There was an initial determination before that, but his clearance was not revoked officially until March of 2006. He could be given back pay for that period because Even though he wasn't followed. Because even though he didn't meet the prerequisite of having a security clearance. Well, he wasn't qualified. For that entire period. Your Honor, he wasn't qualified for the job from which he was suspended, but he might have been qualified for another job to which he could have been transferred. What, they were going to make him a janitor at the TSA? Your Honor, we believe, consistent with notice pleading, we don't have to go through the entire federal register to find all of the positions to which they could have transferred him. Yeah, it's not a disability case. We don't get to the, is there another job in the economy that, you know, or in this case, is there another job in the company? Why should we hold that a government agency has to keep on somebody who is not qualified for the job? Ordinarily, you wouldn't get that. Ordinarily, you'd get at least a summary judgment. But this is a, I don't know how unique it is, but this is a case in which the lack of qualification is clear, is admitted. But the effect of the lack of qualification, I think, is not clear, especially since there are serious allegations that his supervisor was biased against him, that he was treated differently than everyone else. But so what? He didn't have the security. I'm willing to assume that they were wrong. But the point is the Supreme Court has said we can't, that's not our business to say that he wasn't qualified. Somebody has said he's not qualified, and that's the end of that. So what difference does it make if they didn't want him because he was a transvestite or they didn't want him because he was black or they didn't want him because he had blue eyes? It doesn't matter. Under the 1991 Civil Rights Act, Your Honor, we believe it does because when Congress recognized and wrote into law a cause of action for employment decisions taken on the basis of both a legitimate reason and a discriminatory reason, Congress sought to prohibit all discrimination in employment. So if even in spite of his security clearance status, they took a different action with respect to him than they would have had he not been an Arab and a Muslim, the government violated Title VII. Under the mixed motive theory, Dr. Mackey can prove that without ever challenging the validity of the clearance determination against him. They do. No, no, no. I think you might have misspoken. They took the action against him because he wasn't qualified for the job. They may also have discriminated against him, but that was the basis for the denial, for the suspension. Well, Your Honor, they say that it was the basis, that it was the entire basis, but we have a claim that it was not, that a different action would have resulted had it not been for discriminatory animus. And given an opportunity to prove— See, the problem I'm having with even the briefs on both sides in this case, there are two discrete events here. One is the denial of security clearance, and the other is the suspension from his job, and the briefs tend to slip and slide back and forth. Once the security clearance was denied, by definition, he could not perform his job. And that was before he was suspended. At that point, there was an initial determination that that was not a final determination. He was still contesting that determination. But he was disqualified as long as it was being considered. Now, if on final determination they decided that he deserved a security clearance, then we could go back and look at discriminatory actions which resulted in his suspension because he could claim, I should have been qualified the whole time. But he was disqualified the whole time. But even after that initial determination, there were options. There were options available to his supervisor. He could have been kept on paid leave. He had already been placed on leave for two years. Do you agree that there is no precedential decision that discusses whether somebody's qualification is suspended or withdrawn under the mixed motive case? As far as I can tell, this is the first case that raises that issue directly. I believe so, Your Honor. And it's partially for that reason that I would caution this court against a very broad extension of Egan that would eviscerate all discrimination claims of any employee whose security clearance is under review. But we don't have to go behind the denial of security clearance. And we don't have to, we can't, to say that he's not qualified for the job that he has. But nor, Your Honor, do you have to go behind the security clearance to determine whether discriminatory animus played a role in the decision to suspend him without pay instead of less punitive alternative. I think we understand it. Thank you. Your Honor, I see my time. It is. Yeah. Thank you. May it please the Court, my name is Stephen Bressler with the U.S. Department of Justice, Civil Division. On behalf of the defendant, Kathleen, Secretary Chertoff, Administrator Hawley, the U.S. Department of Homeland Security, and the Department of State and Security. Would you answer my question, my last question first? Do you know of any presidential decision, one way or the other, that when somebody brings a mixed motive case, it doesn't matter how much evidence there is of the impermissible motive as long as it's clear that the qualification is not present? I don't know of any case. Yes, I do, Judge Lobert. I'm not sure if you're asking me about a Third Circuit case. No, any case that we would consider presidential, which is the Supreme Court or the Third Circuit. But if you know of one in another circuit, tell us. Yes. We cited in our papers a Fifth Circuit case. I apologize, I don't recall the name of the one we cited. It was following an earlier Fifth Circuit case, which was Rashid, R-A-C-H-I-D, versus Jack in the Box. And I don't know if that one was cited in the parenthetical memory or not. The Fifth Circuit has plainly held that in order to make out a mixed motive claim, you first have to show the first couple elements of a prima facie case, including qualification for the job. District courts in this circuit have so held, and we would argue that… I don't see Rashid in your table. Oh, no, that's not good. Rashid may not be there, Your Honor. I'll have to look in the red brief. Berquist versus Washington Mutual Bank. And that's a Fifth Circuit case? That's a Fifth Circuit case. I believe that is the one, Judge Roth. Yes, thank you. We would also argue… Rashid isn't here. Rashid is not in there. Berquist followed Rashid, but… Berquist. Okay, go ahead. Yeah, plaintiff must establish a prima facie case to proceed under mixed motive theory. Yes. 500 Bedford 344. Yes. The beginning of a prima facie case, not the entire thing, but the first couple of elements. And I think Judge Yahn in the Eastern District of Pennsylvania… Well, that's not precedent. That's correct.  And you think that's… We also… And now, Mr. Michaelman says, well… He says, look, there's a policy behind Title VII, and if we don't get the opportunity to show the discriminatory animus, then we're really violating, we're not following the policy behind Title VII, or at least the period that he's claiming. How do you answer that? Well, first of all, what Mr. Michaelman presented is clearly not the policy behind Title VII. The 1991 amendments that put forth the mixed motive framework as it's being enforced now and as the Supreme Court most recently interpreted it, followed on Justice O'Connor's Price Waterhouse concurrence. Justice O'Connor was very concerned that Title VII not be a thought police statute. If, in the hypothetical that Your Honor presented with the surgeon who never went to medical school, as here, that's absolutely conclusive. It doesn't matter if the hospital administrator is also a bigot. Well, it matters. It's a bad thing. But under Title VII, for the purposes of the law, it doesn't matter what they're thinking when the action they're taking isn't upheld. Under Desert Palace, wouldn't Mackey meet his burden by demonstrating the one illegitimate factor was a motivating factor in the government's decision to suspend him? If he could demonstrate that it was a motivating factor, but motivating has to have some meaning. It can be a motivating factor. In our cases, it doesn't have to be the motivating factor. No, a motivating factor. What about the fact that he was placed on administrative leave the same day the United States invaded Iraq? I... Diapoli has made much of that, but I think it is just pure coincidence. He was placed on... We don't know. Well, first of all, he has not challenged... If I may back up, Your Honor, and start with the timeline, that is correct about the day he invaded Iraq. That is when he was placed on paid administrative leave in March of 2003. He has not challenged the decision to place him on paid leave administratively or in this court. So it is certainly not before... He was then paid for two and a half years before... Well, he's made allegations of discrimination against him based on his ethnicity and religion over a period of time. And I'm just asking you, doesn't... Under Desert Palace, wouldn't that be enough to show a motivating factor in the government's decision? Well, I would say no for a couple of reasons. First, the allegations and the complaints of these remarks over the years of his employment that did not predate any action taken against him. Maybe he could try to make out a hostile environment claim. He has not done that. He kind of makes it out the day the new supervisor came in. As of that date, his complaints become quite a bit more specific. Well, his complaint about his new supervisor, Mr. Burke, the only one that had anything to do with his national origin or religion to protect the characteristics at issue was when he met him, he said, where are you from? And that he was curious about where, not just, you live in Haddonfield now or something, but where... But there's been no discovery. In other words, the argument is that they should at least be able... What you're saying is he hasn't really made out a discriminatory claim, but he hasn't had a chance to make out a discriminatory claim. And my question is, should he be given that chance when you're not qualified for the other reason? Yeah, that's really the question. And he says he hasn't had a chance. I will answer that question. We would not agree that under Twomley, which was decided before Judge Irene's rule in this case, although I don't think he cited it, that it wasn't 12-6, but that he did actually make out a disqualification. But that aside, no, he should not get that chance because under Egan, under Staney, under the D.C. Circuit and other cases that have dealt with it in the Title VII context, it's sort of an all-roads-lead-to-Rome situation. He cannot get there without going through the security clearance, even if he were to say, well, I should have been transferred, which Mr. Michaelman talked about. He did say. He did say, yes. Even if he would say, he said, yes. How can he prove he was similarly situated to somebody else, even somebody else... But all you're saying is he can't prove it. But the question is, should he have the opportunity to prove it? And that's really our question, whether or not, if he is not qualified for the job he currently occupies, does that end the case, as far as we're concerned, under a mixed motive theory. As a matter of law. 12-B-6, yeah. Because the issue is really 12-B-6 versus 56. And does he get a chance to get to Rule 56 at all? Well, no, for a couple of reasons. We actually moved under 12-B-1. 12-B-1. 12-B-1. Yeah. It's a dismissal. Yes. Going back to Your Honor's first question, which was about any presidential opinions, we would also argue that this circuit's en banc opinion, I think by Judge Alito, if I'm not mistaken, and Judge Alito in Keller versus, I think, Warwick's credit, which was also cited in our papers. In that case, there was a pretext claim and a mixed motive claim. And the en banc circuit followed its earlier decision in Fuentes, also cited in our papers, where the circuit laid out a framework. And this is what the district courts in the circuit have followed, which was first, to make out a mixed motive claim, first prove the first three elements of the premeditation case, including qualifications for the job. And then, if he's proceeding under a mixed motive, also established by a preponderance of the evidence that the articulated reason is only one of the reasons for the conduct, and there's another motive in the en banc. You've passed by what I think is really the issue, which I don't know that we have ever said, which is that in a mixed motive case, you have to prove, among other things, qualifications for the job. Because in the Supreme Court's decision, they don't exactly say that. In Fuentes, which was well before Desert Palace, this circuit laid out a framework where, first, you start out with the beginning of the premeditation case. If you're going the pretext route, then you proceed under McDonnell Douglas. And if you are going to proceed under Price Waterhouse or mixed motive, then you have to show, by preponderance of the evidence, what this circuit refers to as direct evidence, that there was a prohibited motivating factor. But that still follows under Fuentes. Yeah, but that doesn't answer the question whether qualification is one of the prima facie elements. Really, the question is, is qualification one of the prima facie elements of a mixed motive case? And that's a legal question. I think the way that the circuit described it in Fuentes, the way the district courts and also the circuit have followed Fuentes, mostly, I think, in unpublished opinions by the circuit, qualification is laid out there. And in Keller, which was en banc, there was a pretext claim, which the court went through that analysis. And then, when it turned to the mixed motive claim, it said, we don't have to spend a very long time on this, because if you look back at what we did under Fuentes, he doesn't get to the stage of trying to prove that there was direct evidence here, because he hasn't gotten through the first couple elements of the prima facie case, including qualification. It's not laid out as much as I just did here. Mr. Michaelman says, he says, wait a minute. He says, don't go, don't sweep too broadly in this case, because you don't want to write an opinion in which you're really washing away the requirements of the mixed motive case and the whole policy behind the anti-discrimination laws. So he says, so go slow. I understand what he's saying. How do you answer that? Well, I would say first, again, Justice O'Connor was very concerned that Congress, in the legislative history to the 1991 amendments, I believe the House report, which is the primary legislative history, specifically said, this isn't the thought beliefs. So if the reason, as with the surgeon, that Your Honor identified in the first place. You all like that hypo. Yes, I like that hypo. If that crowds out everything else, if that occupies the field, then there can be no motivating factor. But even if he, let's assume he's out of the job because he wasn't qualified. But he is, you've shown, you've proven you're affirmative defense. But he's also shown that he was discriminated against because of his ethnicity and religion. He can't get his job back, but under Desert Palace, couldn't he get some back pay or some other type of relief? I don't believe that he could get back pay because he was not qualified. There may be a possible remedy under that case. I think, is there not a remedy under Desert Palace for the acts of discrimination if shown? I believe that. That would not mean reinstatement to his job because he's not qualified. I believe that all that Mr. Mackey identified in the district court was attorney's fees and declaratory relief that I was discriminated against. Well, would you agree that he's entitled to that relief if he was discriminated against? If he could, if it was possible for a court to determine without crossing into factors prohibited under Egan that discrimination was a motivating factor, and he could show that through what this circuit refers to as direct evidence, then yes. But I don't think he can get there. Oh, let's go into that. That's a big concession, I have to say. What would he have to show? What do you think he could show? Because that would require a remand. Well, I don't think it is possible he could show that. I don't think the district court could possibly have jurisdiction to examine that, which is why I think in this case, it's impossible. Well, wait a minute. But you just said, as I understood it, and my colleagues will stop me, or you will, that if he could show that he was in fact discriminated against, then he would be entitled to attorney's fees. He cannot show that he was discriminated against. Well, why not? When the district court dismisses, it doesn't give him a chance to show it because he can't even bring in a dismissal. It doesn't give you the opportunity to bring in evidence that would be judged on a summary judgment standard, not a dismissal standard. So how can we say that he can't show that? For two reasons, Your Honor. The first is, as Judge Irena said, that essentially the qualification issue, well, I think three reasons. The qualification issue crowds out everything else. You're saying egan? Egan, because to determine whether or not that was the 100% reason, it didn't occupy the field, it left some room for something else, you have to look at that reason, and that's something that the district court cannot do. But that's inconsistent with what you just said. No. If it is, then I misspoke, Your Honor. Which is that, as I understood it, if he could show that he was discriminated against, he was picked on because he was Egyptian and a Muslim, then he would be entitled to attorney's leave. Now, if the lack of qualification, lack of security clearance, how can you put that together with saying that the lack of qualification crowds out everything else? Well, I think that he could not get anything, or even assuming the truth of the allegations in his complaint, in this case, because all he's asked for is relief related to his suspension without pay. He hasn't asked for anything during the two and a half years he was getting paid, or anything that happened prior to that when people made certain remarks. But he's asked for, if not the pay, at least attorney's fees, in proving that he was discriminated against. Because he cannot prove that the discrimination was a motivating factor, which is what he would have to do without looking behind Egan. He also can't prove that under the Fifth Circuit precedent and our reading of Keller and Fuentes without getting past qualification, which here, there was no dispute that he was not qualified. But Barry looks like he has a question. He took his time. Should I ask a question? Sure, if you have one. Well, I'll think of one very quickly. Supposing there were two lawsuits filed, one seeking to get his job back. He would lose that because he's not qualified. Yeah. Supposing he filed the second lawsuit basically talking to you about the conditions of the employment under which he operated when he was employed and how he was denied promotions. And that, would you throw that out under Egan? No, that wouldn't have anything to do with it. So isn't that really what we're speaking of here? You're essentially saying there are two distinct claims here. Whether or not there's any validity to the first one or any proof of any discrimination, we don't know. But that's the allegation. But essentially there are two mixed motives. There are two different avenues of potential relief. The second one is conceivably barred by Egan. Yeah. Was that a good question? I have a comment. If the final determination on his security clearance is that he should have it and the initial withdrawal of his security clearance, well, that ultimately he is given back his security clearance, can he go back then and challenge the initial withdrawal and any action in the interim as being at least partly motivated by discrimination? Well, the way that he could have challenged everything to do, and in fact did challenge to a point everything to do with the clearance determination was under the executive order governing access to national security information. There are a lot of procedures. Due process is afforded, although there is no due process vested right in a security clearance. He can challenge that. He did challenge that. He was heard. He convinced them on some of the factors, but not all of them. So he can do that. Well, no, that's interesting because that's where the case gets somewhat muddied. Those reasons, you know, his foreign associates, et cetera, that all goes to whether or not he was denied security clearance. Right. He's raising them here, but of course he has to raise them in terms of being suspended, which were not the reasons he was suspended. He was suspended because he didn't get security clearance. It's a chicken and an egg kind of thing. But those reasons that he's challenged, the inadequate notice, they all go to why he was denied clearance, and therefore we can't go behind it. We cannot litigate those reasons. I would agree. You would agree with that? Yeah. Certainly, Judge Berry, and as I said before, all roads lead to Rome. All of these claims have to go through Egan to reach any kind of relief, regardless of what the facts might turn up, aside from under Egan, and that's why dismissal is required. Thank you. We understand your position. Thank you. Okay. Your Honors, the government before you today is making the same mistake the district court made in that they're trying this case as if we were on summary judgment. They're bringing forth evidence. They're saying Dr. Mackey can't prove his case when he has alleged, and all he must do at this stage is plead that he has a Title VII claim under the mixed motive theory. But there is no issue of fact that he doesn't have a security clearance. There is no issue of fact, but what is at issue, Judge Roth, is whether or not they had to take the most punitive option available to them at the time they did, when the supervisor was about to lose control over Dr. Mackey, when at least one other employee was transferred in the past, when the supervisor was particularly interested in his Arab ethnicity, and as Judge Barry pointed out, initially placed him on leave. Let me put my other hat on now. We're dealing with national security here, at least in their assessment. So I wouldn't be so quick to say we have to scrutinize every act that the government, every look that he received, and give it the discriminatory spin. I mean, we can also say he might well have been within his rights to ask because he believed this guy was a national security risk. Sure, but that's a question for the jury, Your Honor, whether or not the actions taken against him. How are they going to prove that he was a national security risk? We can't go into that. The jury can't do that. We can't consider that, much less a jury. What they can consider is whether or not the actions taken, given taking as valid what happened with the security clearance, whether they nonetheless had to act in an employment sense against him when they did, whether they had to suspend him without pay rather than transferring him, whether... You know what? I think, don't know, if there was an arguable risk of national security, they had to suspend him. Actually, Your Honor, the government's own evidence, the Whitford Memorandum, that the district court improperly used to discount the allegations in the plaintiff's complaint, that suggests that a suspension was permitted but not necessarily required as even the district judge recognized. So there was some opportunity for discretion. And once there's an opportunity for discretion in the employment context, there's an opportunity for all of the discriminatory animus that we've alleged to come into play. I don't know. That I don't know. Even... This is after Iraq was... I don't know. When in doubt, in these times, I'm not so sure they were willing to suspend him. That's speaking only to myself. Certainly not. And I don't think that's our job to say, frankly. No, it isn't. I don't think we can inquire into the validity of the suspension. I think... I mean, I'm perfectly willing, for purposes of this case, I think we have to be willing to accept your claim that he was discriminated against, that he was picked on because he was an act, because he was Egyptian, and he was Muslim. And I think we have to go from there and say, assuming that, what else can be involved? What else is there? And I think that's what we have to decide. What else is there, Your Honor? And I understand what you say, but you say what else is there is that they should have tried to find him or should have found him a job that didn't require security. Right? I mean, isn't that where we are? Yes, Your Honor. Assuming one was available. But that's for discovery. In other words, what he would like is discovery to be able to show that there were other jobs in the TSA that he could have had and probably would have taken, but that's not... Absolutely, Judge Slobiner. This is about getting the case in the door. This is about making it work. I understand. And the question we have is whether you should be able to go there. Does the panel have any questions on the procedural notice claim? I don't think so. Thank you. Okay, thank you. It's an interesting case, and we will take it under advisement. It's a tough argument. Yeah. It's a tough case. Well, I don't know. I'm not sure. Okay, we will hear counsel in Toriello. Look at this. Oh, I guess we know where they came from. Seat North. Seat North.